IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LESLEY AGUILAR,<br>　　　　*Plaintiff*<br><br>-vs-<br><br>HECTOR COLLAZO-DIAZ,<br>DOORDASH, INC.,<br>　　　　*Defendants* | §<br>§<br>§　　SA-22-CV-00642-XR<br>§<br>§<br>§<br>§<br>§<br>§ |

### ORDER

On this date, the Court considered Defendant's motion to exclude the expert testimony of Leonard Vaughn (ECF No. 32) and Plaintiff's response (ECF No. 36). After careful consideration, the Court issues the following order.

### BACKGROUND

This lawsuit arises out of injuries that Plaintiff Lesley Aguilar suffered as a result of an automobile collision on October 8, 2021. Plaintiff alleges that she was a passenger in Defendant Hector Collazo-Diaz's vehicle as he was traveling westbound on Rittiman Road in San Antonio, Bexar County, Texas while working as a delivery driver for Defendant DoorDash, Inc. ("DoorDash"). At the same time, a third-party driver, David Hidalgo, was traveling northbound in a Chevrolet Equinox on IH 35 N Access Road at the intersection of Rittiman Road. Hidalgo proceeded through the intersection when it was his turn. While Hidalgo was traveling through the intersection, Collazo-Diaz allegedly failed to yield to the right of way and collided with Hidalgo's vehicle.

Plaintiff filed her original complaint in this Court on June 21, 2022, alleging a claim for negligence against Collazo-Diaz and asserting that DoorDash was vicariously responsible for Collazo-Diaz's negligence as his employer or, alternatively, as a member of a joint venture with

Collazo-Diaz. ECF No. 1 at 4–6. Plaintiff further alleges that DoorDash is directly liable for her injuries, bringing claims for negligent hiring, training, and supervision. *Id.* at 6–7.

Plaintiff designated Leonard Vaughan as a testifying expert to reconstruct the crash and its contributing factors, including Collazo-Diaz's purported traffic violations. *See* ECF No. 26 at 6. Although he entered the field as an accident investigator, Mr. Vaughan's accident reconstructionist career spans five decades. ECF No. 36-2, Vaughan Dep. Tr. at 126:2–23. He instructed accident investigation and public safety courses at the Texas Department of Public Safety for over twenty years. ECF No. 36-4 at 2. He also holds eleven certificates related to accident investigation and reconstruction. *Id.* at 3. Finally, Mr. Vaughan is a member of the International Association of Accident Reconstruction Specialists. *Id.* at 4.

After inspecting the accident scene, analyzing crash photographs, reviewing applicable deposition testimony, and evaluating the San Antonio Police Department crash file, Mr. Vaughan produced a report expressing the following opinions:

1. David Hidalgo was driving his 2014 Chevrolet Equinox on the northbound access round of IH-35 as he approached the site of the incident.

2. According to the police report, Mr. Hidalgo stopped at the intersection before crossing Rittman Road.

3. Hector Collazo-Diaz was driving his 2020 Mitsubishi Eclipse on [sic] westbound Rittman Road as he approached the site of the incident.

4. Mr. Collazo-Diaz slowed down but did not stop at the intersection.

5. Mr. Collazo-Diaz stated in his interrogatory response that there was a power outage at the time of the incident.

6. Mr. Collazo-Diaz testified that he was traveling at the speed limit of 35 approaching the intersection.

7. As Mr. Collazo-Diaz approached the intersection, the headlights of the Chevy Equinox would have been visible entering the intersection to Mr. Collazo-Diaz' [sic] left.

8. Mr. Collazo-Diaz stated that after slowing to 25-30, he proceeded forward without stopping because he didn't see a reason to stop.

9. Mr. Collazo-Diaz stated that he knows that when traffic lights are not operational, a motorist is supposed to treat the intersection like a 4-way stop.

10. Mr. Collazo-Diaz stated that he did not see the traffic lights because they were obscured by the overpass behind the traffic lights.

11. Mr. Collazo-Diaz also stated that he did not know he was approaching a major intersection, thinking instead that it looked like an exit from the overpass.

12. Mr. Collazo-Diaz should have stopped his vehicle enough to accurately assess the safety of moving through [sic] intersection.

13. DoorDash, through their driver Hector Collazo-Diaz, violated Texas Transportation Code [("TTC")] 545.351 when Mr. Collazo-Diaz failed to appropriately reduce his speed as he approached this collision.

ECF No. 32-1 at 19.

DoorDash challenges Mr. Vaughan's opinions in full. Specifically, DoorDash asserts that Opinions 1–6 and 8–11 (collectively, the "fact-based opinions") are mere recitations of undisputed facts, which should be presented to the jury through fact witnesses, not expert testimony. ECF No. 32 at 8. Next, DoorDash contends that the opinions concerning the visibility of Hidalgo's headlights, Collazo-Diaz's duty to stop his vehicle for entering the intersection, and DoorDash's liability for the alleged traffic violation (Opinions 7, 12, and 13) are speculative, lack adequate foundation, and fail Rule 403's balancing test. *Id.* at 9–13; (citing FED. R. EVID. 403 and 702). DoorDash further objects to Mr. Vaughan's traffic-violation opinion to the extent that it addresses vicarious liability because it exceeds the scope of his expertise. *Id.* at 6–7.

## DISCUSSION

**I.      Legal Standard**

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert" to testify if:

   a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

   b) the testimony is based on sufficient facts or data;

   c) the testimony is the product of reliable principles and methods; and

   d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). If the expert is qualified, a court must follow *Daubert*'s analytical framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id.* at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing reliability: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or

potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593–94; *see also Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." FED. R. EVID. 401. Expert testimony in the form of legal opinion invades the province of the Court and does not assist the trier of fact. While an expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact, FED. R. EVID. 704(a), experts may not offer legal opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. *See Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *see also Askanase v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997).

A trial court's role as gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing Rule 702 advisory committee's note). Thus, in determining the admissibility of expert testimony, the court should approach its task "with proper deference to the [factfinder]'s role as the arbiter

of disputes between conflicting opinions." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* FED. R. EVID. 104.

**II.    Analysis**

As a threshold matter, the Court is satisfied that Mr. Vaughan is qualified as an expert on accident reconstruction, under the Fifth Circuit's "most extensive exegesis" on the topic, *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999). *Mendoza v. PGT Trucking, Inc.*, No. 1:18-cv-432-LY-ML, 2020 WL 2976012, at *3 (W.D. Tex. Feb. 28, 2020) (internal quotation marks omitted). *Wilson* directs district courts to the following factors in scrutinizing accident reconstruction experts:

> (1) whether the proposed expert has held a professional rank; (2) whether the proposed expert has taught accident reconstruction courses; (3) whether the proposed expert holds degrees or certificates in accident reconstruction; (4) whether the proposed expert has completed requirements for certification by the Association of Accident Reconstructionists; (5) whether the proposed expert has been excluded by other courts; (6) whether the proposed expert conducted accident reconstruction studies or experiments; (7) whether the proposed expert took measurements, collected data from the accident scene, examined the tires, or examined parts of the vehicles; (8) whether the proposed expert based their calculations solely on publicly available data; and (9) whether the proposed expert maintains relevant expertise.

*See id.*; *see also Burgo v. Davis*, No. 15-2430, 2016 WL 3257589, at *3–4 (E.D. La. June 14, 2016). Essentially, the first five factors pertain to accident reconstructionist qualifications, and the latter four factors contemplate the expert's reconstruction methodologies.

6

Mr. Vaughan has several accident reconstruction certificates and has taught accident reconstruction at the Texas Department of Public Safety for two decades. ECF No. 36-4 at 2–4. DoorDash does not appear to challenge his qualifications. The Court is satisfied that Mr. Vaughan is qualified as an accident reconstruction expert. *See Sandlin v. Urbina*, No. 19-00556-BAJ-RLB, 2022 WL 636677, at *4 (M.D. La. Mar. 4, 2022) (qualifying an accident reconstruction expert that had crash investigation experience, worked in the traffic homicide unit reconstructing crashes, and "completed over 600 hours of coursework in the field of accident reconstruction"); *cf. Mendoza*, 2020 WL 2976012, at *3 (excluding expert, in part, because he did not have a college degree, had never taught an accident reconstruction course, and did not have any accident reconstruction certificates). Thus, the Court turns to DoorDash's specific challenges to the reliability of Mr. Vaughan's opinions.

A.  **The Fact-Based Opinions**

DoorDash contests Mr. Vaughan's very *classification* of the fact-based opinions as "opinions," asserting that they should be stricken as impermissible credibility determinations that will invade the fact-finding province of the jury. ECF No. 32 at 8, 12; *see Rodriguez v. Transportes de Carga FEMA, S.A. de C.V.*, No. 5:18-cv-114, 2020 WL 6938329, at *6 (S.D. Tex. July 28, 2020). Plaintiff responds that Rule 702 not only permits but *requires* Mr. Vaughan to rely on these facts to formulate his opinions. ECF No. 36 at 14.

The Court recognizes a latent risk in Mr. Vaughan acting solely as Plaintiff's conduit for her purported facts. *See Robroy Industries-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-cv-512-WCB, 2017 WL 1319553, at *10 (E.D. Tex. Apr. 10, 2017) (collecting cases). To the extent that Mr. Vaughan's opinions are "merely used to repeat or summarize what the jury independently has the ability to understand," the Court agrees they would be superfluous. *Id.* Nonetheless, experts are permitted to rely on assumptions when reaching their opinions. *See*

*Daubert*, 509 U.S. at 589; *Kumho Tire*, 526 U.S. at 153–54; *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727, 732–33 (5th Cir. 2008) (unpublished) (holding that an expert's opinion was not rendered unreliable merely because he made a number of assumptions). But those assumptions must have some factual basis in the record and an underlying rationale. *See Moore*, 547 F. App'x at 516; *cf. Rolls–Royce Corp. v. Heros, Inc.*, No. 3:07-CV-0739-D, 2010 WL 184313, at *6 (N.D. Tex. Jan. 14, 2010) ("Testimony is irrelevant . . . when an expert offers a conclusion based on assumptions unsupported by the facts of the case.").

Here, Mr. Vaughan draws, albeit selectively, on the factual record as support for the assumptions informing his opinions. So long as the facts are of the kind typically relied on by experts in accident reconstruction, Mr. Vaughan is free to base his opinions on them. *See* FED. R. EVID. 703; *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) "The expert may be required to disclose the underlying facts upon which he relied [at trial.]"). His recitation of these facts does not constitute a credibility determination. *Cf. Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156, 167 (S.D. Tex Dec. 19, 2018) (striking an expert's opinion "that there [were] been no credible reports"); *Nale v. Finley*, 505 F. Supp. 3d 635, 646 (W.D. La. Dec. 7, 2020) (finding a remark that a witness statement was "suspicious" to be an impermissible credibility determination). If Mr. Vaughan's analysis relies on disputed facts, DoorDash will have a chance to challenge them through "[v]igorous cross-examination" and the "presentation of contrary evidence" at trial. *Daubert*, 509 U.S. at 596. Such attacks on the "bases" of an expert opinion "affect the weight to be assigned to that opinion rather than its admissibility" and should also "be left for the [factfinder]'s consideration." *Viterbo*, 826 F.2d at 422.

B.    Reliability of the Remaining Opinions (Opinions 7, 12, and 13)

Next, DoorDash asserts that Mr. Vaughan's opinions concerning the visibility of Hidalgo's headlights and Collazo-Diaz's duty to have stopped his vehicle before proceeding into the intersection—rather than merely slowing down—are not rooted in scientific, technical, or other specified knowledge. ECF No. 32 at 7–8. Rather, DoorDash argues, these opinions constitute impermissible credibility determinations and pose a danger of undue prejudice, confusing the issues, and misleading the jury that substantially outweighs their probative value. *Id.* at 12–13 (citing FED. R. EVID. 403). Plaintiff responds that "[t]he fact that Mr. Vaughan may not have inspected, conducted his analysis, or written his report exactly as Defendants would have preferred 'goes to the weight, not the admissibility'" of his testimony. ECF No. 36 at 19 n.1 (quoting *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 802–03, 812 (N.D. Tex. 2013)).

DoorDash asserts Mr. Vaughan's opinions are unreliable because they are not premised on any valid scientific methodology, noting that Mr. Vaughan failed to "locate either car to download the [black box] data, inspect and take complete pictures of the cars, take measurements and analyze the impact of each, calculate the force and speed necessary" and "never interviewed the drivers to the accident." ECF No. 32 at 10–11. Mr. Vaughan's report and testimony should be excluded, DoorDash argues, on the same basis that the reconstruction expert in *Mendoza* was excluded: "[his] analysis consisted solely of reviewing photographs and applying 'common sense.'" *See* ECF No. 32 at 5 (quoting *Mendoza*, 2020 WL 2976012, at *3).

Plaintiff acknowledges that Mr. Vaughan's "work was not that detailed" but asserts that the underlying methodology satisfies *Wilson*'s framework: Mr. Vaughan examined the collision scene (albeit during the daytime), crash photographs, Google Maps, and deposition testimony from Plaintiff and Mr. Collazo-Diaz. ECF No. 36 at 17–18; *see also id.* at 20 (arguing that the

9

*Mendoza* expert was stricken because he "ha[d] no academic credentials" and "ha[d] no certificate in accident reconstruction") (quoting *Mendoza*, 2020 WL 2976012, at *3).

The Court agrees with Plaintiff that Mr. Vaughan's methodology was sufficiently reliable for the purpose of admitting his opinion as to the visibility of Mr. Hidalgo's headlights (Opinion 7). *See Sandlin v. Urbina*, No. 19-00556-BAJ-RLB, 2022 WL 636677, at *3 (M.D. La. Mar. 4, 2022) (concluding that, in tandem with his experience as an accident reconstruction, expert's review of crash photographs, Google satellite imagery, deposition testimony, and the collision scene "was 'reliable enough for the purpose of admissibility'") (quoting *Young v. Am. Eagle Lines*, No. CV 05-1079-JVP-SCR, 2007 WL 9710791, at *2 (M.D. La. Feb. 14, 2007)). This opinion is also admissible under Rule 401 and Rule 403. As DoorDash recognizes, the primary fact issue in this case is "what degree of fault does each of two drivers at the intersection have for causing the accident." ECF No. 32 at 12. The visibility of Mr. Hidalgo's headlights is clearly relevant to this issue. *See* FED. R. EVID. 401. Given the Fifth Circuit's directive to apply Rule 403 sparingly, the Court is not convinced that the danger of unfair prejudice, confusing the issues, or misleading the jury substantially outweighs this probative value. *See Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008) (citing *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)).

The Court does not reach DoorDash's attacks on the reliability of Mr. Vaughan's remaining opinions in light of its conclusion, discussed below, that they contain inadmissible legal conclusions.

### C. Impermissible Legal Conclusions (Opinions 12 and 13)

Finally, DoorDash challenges Mr. Vaughan's opinion that DoorDash, through Mr. Collazo-Diaz, violated TTC 545.351 when he failed to appropriately reduce his speed on the

bases that it exceeds the scope of Mr. Vaughan's accident reconstruction expertise and constitutes an impermissible legal conclusion. ECF No. 32 at 2, 6, 14.

There is no reason to believe that Mr. Vaughan's accident reconstruction credentials or experience qualify him to opine on DoorDash's vicarious liability based on its employment relationship with Mr. Collazo-Diaz. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018) (noting that whether a worker is an employee or an independent contractor depends on "whether the employer has the right to control the progress, details, and methods of operations of the work"). Plaintiff asserts that "the employment and/or agency relationship between DoorDash and Mr. Collazo-Diaz was already established through evidence and can be considered a fact by Mr. Vaughan." ECF No. 36 at 8. Since Plaintiff has failed to establish that Mr. Vaughan is qualified to testify on employment relations, it is not clear to the Court why he has produced any opinion concerning vicarious liability. *Daubert*, 509 U.S. at 610 n.10 (citing FED. R. EVID. 104(a) and *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)). Without any relevant expertise, Mr. Vaughan's testimony on employment matters will not assist the trier of fact in either understanding the evidence or determining a fact in issue. *See* FED. R. EVID. 702(a).

More importantly, the Court observes that Mr. Vaughan's opinions contain a number of impermissible legal conclusions as to the proper standard of care, Mr. Collazo-Diaz's employment relationship with DoorDash, and his violation of TTC 545.351. While an expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact, FED. R. EVID. 704(a), experts may not offer legal opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. *See Estate of Sowell*, 198 F.3d at 171; *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996) (experts may not render conclusions of law). Such testimony "both invades the court's province and is irrelevant." *Owen*

*v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). When opinion testimony combines law and fact, the question is "whether the opinion will 'help the trier of fact to understand the evidence or to determine a fact in issue.'" 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6284 (2d ed.) (quoting FED. R. EVID. 702). But "there is often a fine line between admissible expert testimony pertaining to inferences that can be drawn from the facts of the case and inadmissible legal conclusions." *United States v. Oti*, 872 F.3d 678, 692 (5th Cir. 2017).

Together, Mr. Vaughan's opinions that Mr. Collazo-Diaz's failure to stop at the intersection constituted a violation of TTC 545.351, for which DoorDash is vicariously liable, amount to legal conclusions as to the proper standard of care in this case, Mr. Collazo-Diaz's breach of that standard, and his employment relationship with DoorDash. These opinions must be excluded because they invade the province of both the court and the jury. *See Stewart v. Hankins*, No. 4:15-CV-586, 2016 WL 7971299, at *3 (E.D. Tex. Oct. 26, 2016) (excluding expert opinions as to whether the parties violated TTC 545 by failing the stop at a red light and failing to wait to proceed into the intersection until it was safe to do so because whether the parties "shared responsibility for Plaintiff's alleged injuries is an 'issue the jury must resolve after appropriate legal instructions by the court'") (quoting *Owen*, 698 F.2d at 240)); *see also Askanase*, 130 F.3d at 672–73 (holding that an expert opinion on whether individuals breached their fiduciary duties was an inadmissible legal conclusion); *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) (expert opinions as to whether a defendant violated the law are inadmissible).

Still, the Court rejects the argument that Mr. Vaughan's testimony should be excluded in its entirety because "[i]t is impossible to know, at this time, the point at which [the witness]'s

12

testimony crosses from permissible expert opinions into the realm of inadmissible legal opinions, and the Court must hear and assess the evidence before drawing that line." *Rader v. Bruister*, No. 4:10cv95–DPJ–FKB, 2013 WL 6805403, at *16 (S.D. Miss. Dec. 20, 2013). "Whether an opinion can be viewed as a legal conclusion . . . depends in large part upon the question asked." *See Tolan v. City of Bellaire*, No. H-09-1234, 2015 WL 12765413, at *3 (S.D. Tex. Aug. 28, 2015) (citing *United States v. Perkins*, 470 F.3d 150, 159–90 (4th Cir. 2006)).

Thus, the Court concludes that Mr. Vaughan should be permitted to testify, but DoorDash has accurately identified aspects of his testimony that are questionable in terms of admissibility. To the extent that DoorDash's motion is denied, the denial is without prejudice to raising appropriate objections during trial and arguing that all or a portion of Mr. Vaughan's testimony should be disregarded entirely as unreliable rather than merely given certain weight.

## CONCLUSION

Accordingly, the Court hereby **ORDERS** that Defendant DoorDash's motion to exclude the testimony of Leonard Vaughan (ECF No. 32) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to legal conclusions presented in Opinions 12 and 13, and otherwise **DENIED WITHOUT PREJUDICE** to re-urging in the form of appropriate objections at trial.

It is so **ORDERED.**

**SIGNED** this 25th day of September, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE